## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JESSIE CAMPBELL III, | : | |
| Plaintiff, | : | No. 3:19-cv-1430 (SRU) |
| | : | |
| v. | : | |
| | : | |
| MALDANADO, et al., | : | |
| Defendants. | : | |

### INITIAL REVIEW ORDER RE AMENDED COMPLAINT

Jessie Campbell III, currently confined at Northern Correctional Institution ("NCI") in Somers, Connecticut and proceeding *pro se*, filed the instant suit under 42 U.S.C. § 1983 challenging his "special circumstances high security" status at NCI.  He asserts that his conditions constitute cruel and unusual punishment in violation of the Eighth Amendment, infringe on his right to due process under the Fourteenth Amendment, violate the Ex Post Facto Clause, and constitute an unconstitutional bill of attainder.

Campbell brings suit against twelve individuals whom he identifies as follows: Commissioner Rollin Cook, Department of Correction Reclassification Form Guy/Man Dave Maiga, Director of Security Christine Whidden, Warden William Mulligan, Unit Manager/Captain Gregorio Robles, Director of Programs and Treatment Karl Lewis, District Administrator Angel Quiros, Warden William Faneuff, Warden Ann Cournoyer, Warden

Rodriguez, Psychiatric APRN Andrea C. Reischerl, Counselor Supervisor Davis, and Reverend Charles F. Williams.[1]  Am. Compl., Doc. No. 10, at ¶¶ 4–5.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and conclusory allegations will not suffice,  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

---

[1] In my prior Initial Review Order, I instructed Campbell to list all the defendants in the case caption in accordance with Federal Rule of Civil Procedure 10(a), which provides that the title of the complaint must include the names of all the parties.  Order, Doc. No. 9, at 3.  Although Reverend Williams was not listed in the case caption, I will excuse that error and consider him a defendant in the case because he is mentioned in other portions of the complaint.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("We will . . . excuse technical pleading irregularities as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party.").

I.    **Background**

    a.   <u>Allegations</u>

On August 16, 2007, Campbell was convicted of capital felony murder and sentenced to

death.  Am. Compl., Doc. No. 10, at 7 ¶ 1.  Four months later, on December 18, 2007, Campbell

was placed in solitary confinement on Administrative Segregation at NCI.  *Id.*  Campbell has not

left solitary confinement since.  *Id.*

On April 12, 2012, the state legislature enacted a law, Conn. Gen. Stat. § 18-10b, that

places prisoners previously convicted of a capital offense on "special circumstances high security

status" and houses them in solitary confinement for an indefinite period of time.  *See id*. at ¶ 5.

Legislators identified Campbell as a target of the statute.  *Id.*  Following the passage of section

18-10b, Commission Cook and former Warden Mulligan—both of whom were responsible for

developing and applying policies and laws at NCI—refused to release Campbell to the general

population.  *See id.* at ¶¶ 11, 13–14.

On August 13, 2015, the Connecticut legislature abolished the death penalty for the

eleven men on death row.  *Id.* at ¶ 12.  Campbell was resentenced to life imprisonment without

the possibility of release on April 18, 2018.  *Id.* at ¶ 14.

For over a decade, Campbell has been denied sunlight, kept inside for twenty-three hours

a day, and subjected to loud noises.  *See id.* at ¶ 20.  Campbell submitted a request for ear plugs,

which was denied, as well as a grievance about "unregulated heat" and "freezing temperatures"

to Wardens Mulligan and Faneuff.  *See id* at ¶ 20, 75.

Campbell has also faced restrictions with respect to phone calls, showers, commissary

purchases, work, educational programs, and social interactions.  *Id.* at ¶ 44.  He has not been able

to purchase certain commissary items available to others in the general population, and has been denied "real work" and a "decent wage." *Id.* at ¶¶ 21, 22.  Unit Manager Robles and Warden Rodriguez in particular both denied Campbell a prison job.  *Id.*  In addition, Campbell has been denied contact visits, barred from the picture program, and frequently pat-searched.  *Id.* at ¶ 44.

With a wage of $6.50, which he received every two weeks, he cannot purchase toiletries and other items, such as stamps and writing supplies.  *Id.* at ¶¶ 23, 25.  Moreover, because the Department of Correction ("DOC") indigency policy requires a prisoner to have less than $5.00 in his or her account for ninety days to be considered indigent, Campbell can never meet the indigency standard.  *See id.* at ¶ 24.

Campbell has been repeatedly reclassified as a "special circumstances high security" prisoner without a hearing.  *Id*. at ¶ 32.  On August 21, 2015, August 24, 2015, September 12, 2017, and August 19, 2019, classification review notices were dropped off at Campbell's cell without discussion.  *Id*. at ¶¶ 30–31, 37–38.  Although an August 29, 2017 letter from Warden Faneuff indicates that Campbell received a hearing, Campbell maintains that no hearing was held.  *Id*. at ¶ 33.

Campbell submitted grievances to Warden Rodriguez requesting "meaningful review," which were denied.  *Id.* at ¶¶ 34–36.  On March 27, 2018, Campbell wrote to Counselor Supervisor Davis seeking clarification of the classification process and asking why the classification notice forms were not filled out in their entirety.  *Id.* at ¶¶ 28–29.

Campbell, who suffers from a mental disorder, also wrote to APRN Reischerl, who is aware of Campbell's psychological condition and of his confinement in solitary.  *Id.* at ¶¶ 3, 4. Reischerl, however, did not provide a "helpful response."  *Id.* at ¶ 4.

4

Campbell alleges that all defendants, except Reverend Williams, participate in managing him in solitary confinement. *Id*. at ¶ 43. He further alleges that Mulligan, Cook, Robles, Quiros, Lewis, Whidden, and Reverend Williams know that he had been placed in solitary confinement at NCI indefinitely. *Id*. at ¶¶ 2, 7.

b. Procedural History

Campbell brought the instant suit on September 11, 2019. Compl., Doc. No. 1. On January 9, 2020, I directed Campbell to file an amended complaint that was signed, that identified all of the defendants in the case caption, and that included a complete statement of all of his claims. Order, Doc. No. 9, at 3. Thereafter, on January 24, 2020, Campbell filed a 104-page document consisting of the amended complaint and several other documents and exhibits. Am. Compl., Doc. No. 10.

As articulated in the amended complaint, Campbell seeks monetary and punitive damages; a declaration that the defendants were "wrong to increase punishment of solitary confinement" and that the policies are "cruel" in violation of the Eighth Amendment; injunctive relief, including immediate release from solitary confinement, "meaningful review," contact visits, participation in the picture program, a job, educational programming, commissary, and a living wage; and attorneys' fees and costs. Am. Compl., Doc. No. 10, at 8, 53.

**II.    Discussion**

Construing the amended complaint liberally as I must, I conclude that Campbell is asserting claims under the Bill of Attainder and Ex Post Facto Clause, the Eighth Amendment, and the Due Process Clause. I address each claim in turn.

5

A.     Bill of Attainder and Ex Post Facto Claims

Article I, section 10 of the United States Constitution declares that "[n]o State shall . . .

pass any Bill of Attainder [or] ex post facto Law."  Const. art 1 § 10, cl. 1 .  "[A] constitutionally

proscribed bill of attainder is 'a law that legislatively determines guilt and inflicts punishment

upon an identifiable individual without provision of the protections of a judicial trial.'"

*Consolidated Edison Co. of New York v. Pataki*, 292 F.3d 338, 346 (2d Cir. 2002) (quoting

*Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468 (1977)).  As the Supreme Court noted,

the analysis governing whether a statute constitutes a bill of attainder "necessarily requires an

inquiry into whether the three definitional elements—[1] specificity in identification, [2]

punishment, and [3] lack of a judicial trial—are contained in the statute."  *Reynolds v. Arnone*,

402 F. Supp. 3d 3, 40 (D. Conn. 2019) (citing *United States v. O'Brien*, 391 U.S. 367, 383 n.30

(1968)).

In the case at bar, Campbell alleges that the state legislature specifically identified him as

a target of Conn. Gen. Stat. § 18-10b.  *See* Am. Compl., Doc. No. 10, at ¶ 5.  Campbell has thus

satisfied the first element of the analysis.  *Reynolds*, 402 F. Supp. 3d at 40 (holding that the

specificity in identification element was met when the legislative debate leading up to the

passage of the statute mentioned the plaintiff by name).

With respect to the second element—punishment—courts weigh three factors when

deciding whether a law imposes "punishment" on a certain individual:  "(1) whether the

challenged statute falls within the historical meaning of legislative punishment (historical test of

punishment); (2) whether the statute, 'viewed in terms of the type and severity of burdens

imposed, reasonably can be said to further nonpunitive legislative purposes' (functional test of

6

punishment); and (3) whether the legislative record 'evinces a [legislative] intent to punish' (motivational test of punishment)." *Reynolds*, 402 F. Supp. 3d at 41 (citing *ACORN v. United States*, 618 F.3d 125, 136 (2d Cir. 2010)).

In *Reynolds*, I held that section 18-10b satisfied all three tests of punishment. *Id*. at 41–44. The law subjects prisoners to "the most restrictive form of incarceration available within the State of Connecticut," thus satisfying the historical test; was "expressly created to punish" the eleven prisoners on Connecticut's death row, thus satisfying the functional test; and was clearly "intended to punish" those eleven individuals, thus satisfying the motivational test. *Id*. For those same reasons, I conclude that all tests have been satisfied here and that the second prong has been met.

With respect to the final element—the lack of a judicial trial—the text of section 18-10b does not provide Campbell the option of a judicial hearing. *Id*. at 44 ("There is no language in the text of Section 18-10b that affords Reynolds a judicial hearing."). Like Reynolds, Campbell was neither convicted nor sentenced pursuant to section 18-10b; the statute was enacted in 2012, well after Campbell's criminal trial in 2007. *Id.* As such, the third element is sufficiently met, and Campbell has stated a cognizable bill of attainder claim. *Id.* (concluding that section 18-10b is an unconstitutional bill of attainder).

Because Campbell has pled a colorable bill of attainder claim, I need not address here whether he has also stated a valid ex post facto claim. *Id.* ("Because I conclude that Section 18-10b is an unconstitutional bill of attainder, I do not reach the issue of whether Section 18-10b also violates the Ex-Post Facto Clause.").

7

B.    Eighth Amendment Claim

Campbell next challenges his conditions at NCI as violative of the Eighth Amendment.

To state a claim for unconstitutional conditions of confinement under the Eighth Amendment,

Campbell must allege facts establishing "both an objective element—that the prison officials'

transgression was 'sufficiently serious'—and a subjective element—that the official acted, or

omitted to act, with a 'sufficiently culpable state of mind.' *i.e.*, with 'deliberate indifference to

inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In *Reynolds*, I held that Reynolds' ongoing confinement in near-total isolation—coupled

with the denial of contact visits and exposure to extreme temperatures and noisy conditions—

satisfied the objective element of the Eighth Amendment analysis. *Reynolds*, 402 F. Supp. 3d at

15–20.  I further held that the prison officials' awareness of the risks associated with prolonged

isolation, as well as their failure to respond to those risks, satisfied the subjective element. *Id.* at

21–23.

According to Campbell's complaint, he was housed under the same conditions as

Reynolds.  Campbell alleges that he has been deprived of sunlight and kept inside a cell for

twenty-three hours a day for over a decade.  Am. Compl., Doc. No. 10, at ¶ 20.  Throughout

those years, he has been subjected to loud noises, unregulated heat, and freezing temperatures;

deprived of contact visits, of participation in educational programs, of social interaction, and of a

job; and restricted in his phone calls and showers.  Am. Compl., Doc. No. 10, at ¶¶ 20–22, 43–

44.  Campbell has therefore sufficiently met the objective prong of the Eighth Amendment test.

Because the complaint indicates that all defendants were aware that Campbell had been placed in solitary confinement at NCI indefinitely and failed to take steps to better those conditions, Campbell has also sufficiently met the subjective prong. *See id*. at ¶¶ 2, 7, 43. Campbell's Eighth Amendment claim may therefore proceed.

To the extent Campbell alleges that the DOC's indigency policy also violates the Eighth Amendment, I will allow that claim to move forward as well. Campbell appears to assert that, because he earns wages of $6.50 every two weeks, he is not considered indigent under the policy and thus is not eligible to receive certain items offered for free. *See* Am. Compl., Doc. No. 10, at ¶¶ 23–25; *see also Lebron v. Armstrong*, 289 F. Supp. 2d 56, 58 (D. Conn. 2003) (noting that the DOC indigency policy "requires an inmate to have less than $5.00 in his inmate account for ninety days to be considered indigent (and thus receive free mailing services)"). Campbell further contends that toothpaste and soap costs $2.93 and $1.88, respectively, and that he cannot afford other toiletries, such as a toothbrush and deodorant, as well as other items, such as stamps and writing supplies. *See* Am. Compl., Doc. No. 10, at ¶ 25 ("I am given 6.50 to get toothpaste which is 2.93 and soap [which] is 1.88 and with tax. The 6.50 I get is every two weeks which doesn't cover stamps, and envelop papers, pens, toothbrush, deodorant, and other cosmetics I need regularly to survive."). Campbell asserts that the indigency system is thus cruel, and deprives him of his basic needs and of an opportunity to "live a clean lifestyle." *Id*.

It is not clear from the complaint how the indigency policy allegedly impacts Campbell's ability to afford toiletries. Drawing all inferences in Campbell's favor, I read the complaint to allege that, because he is not able to receive some items, such as mailing materials, for free under the policy, the policy forces him to choose between purchasing those items and toiletries with his

9

meager earnings.[2]  Because the indigency policy thus allegedly forces Campbell to forgo basic

hygienic products, and because "the failure to provide prisoners with toiletries and other hygienic

materials may rise to the level of a constitutional violation," *Walker v. Schult*, 717 F.3d 119, 127

(2d Cir. 2013), I conclude that Campbell has sufficiently met the objective prong of the Eighth

Amendment analysis.  *See also Trammell v. Keane*, 338 F.3d 155, 164, 165 (2d Cir. 2003)

(collecting cases); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The

failure to regularly provide prisoners with . . . toilet articles including soap, razors, combs,

toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a

denial of personal hygiene and sanitary living conditions.") (internal quotations marks and

citations omitted).

With respect to the subjective prong, Campbell alleges that all of the defendants, except

Reverend Williams, participated in managing him in solitary confinement, and that Mulligan,

Cook, Robles, Quiros, Lewis, Whidden, and Reverend Williams knew that he had been placed in

solitary confinement indefinitely.  *Id.* at ¶¶ 2, 7, 43.  Campbell has also appended to his

complaint a grievance appeal form that he submitted in November 2017, which states that he

cannot afford, *inter alia*, soap, toothpaste, and deodorant, and that he can never be considered

indigent because his biweekly wages are $7.50.  *See id.* at 63.  Liberally construed, the amended

_____

[2] I note that the Second Circuit and this district have rejected constitutional challenges brought against policies requiring prisoners to make choices about how to spend their available funds.  *See Nicholas v. Tucker*, 114 F.3d 17, 21 (2d Cir. 1997) (rejecting prisoner's as-applied Equal Protection Clause challenge to the Prison Litigation Reform Act's filing fee provisions because the prisoner's inability to spend his restricted funds in the manner that he chooses places him in the same position as non-prisoners); *see also Lebron v. Armstrong*, 289 F. Supp. 2d 56, 61 (D. Conn. 2003) (rejecting argument that a prisoner's right to access the courts encompasses a right to an unlimited supply of legal materials and a right to not have to balance the need for those items against other commissary purchases when deciding how to spend funds).  Because those cases did not involve Eighth Amendment claims, they do not govern my analysis.

complaint thus adequately alleges that the defendants knew that Campbell was deprived of toiletries and failed to remedy the situation. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (concluding that the allegation that prison guards "made daily rounds of SHU" was enough to plead that the defendants had actual knowledge of the inhumane conditions).

Although Campbell has therefore plausibly alleged that the indigency policy violates his Eighth Amendment rights, it is well-settled that "[a] prison regulation or policy may permissibly infringe on an inmate's constitutional rights if it is 'reasonably related to legitimate penological interests.'" *St. Louis v. Wu*, 2019 WL 2357566, at *7 (D. Conn. June 4, 2019) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts assess four factors in weighing the reasonableness of a policy:

> (i) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates; (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and (iv) whether there are reasonable alternatives available to the prison authorities.

*Id. (*citing *Covino v. Patrissi*, 967 F.2d 73, 78–79 (2d Cir. 1992)).

I cannot evaluate those factors here without additional information. Accordingly, I will allow the Eighth Amendment challenge to the indigency policy to proceed in order to enable the record to develop further. *Id*.

C.    Due Process Claim

Lastly, Campbell alleges that he has not been afforded adequate due process in connection with the defendants' classification decisions. To prevail on a due process claim in relation to a classification decision, Campbell "must show that he had a protected liberty interest

in remaining free from the classification and, if he had such an interest, that the Defendants deprived him of the interest without affording him due process of law." *Reynolds*, 402 F. Supp. 3d at 25.

Applying that standard, I held in *Reynolds* that Reynolds enjoyed a protected liberty interest in remaining free from the conditions that he experienced as a special circumstances prisoner—namely, extreme and permanent social isolation. *Id*. at 25–28. I further held that the prison officials had deprived Reynolds of that liberty interest without due process of law because they failed to provide him with advance notice of their reviews concerning his placement on special circumstances status or with an opportunity to be heard. *Id.* at 28–30.

Here, Campbell alleges that he, like Reynolds, has been subjected to extreme and permanent social isolation as a special circumstances prisoner, and that the defendants have repeatedly reclassified him as such without an opportunity for a hearing. *See, e.g*., Am. Compl., Doc. No. 10, at ¶ 27. According to the complaint, classification review sheets have simply been slipped under his door without any discussion. *See id*. at ¶¶ 30–31, 37–38. I conclude that Campbell has therefore stated a colorable due process claim.

D. <u>Monetary Damages</u>

To the extent Campbell seeks damages against the defendants in their official capacities, those claims are barred by the Eleventh Amendment. *Day v. Gallagher*, 151 F. Supp. 3d 253, 254 (D. Conn. 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). All such claims are thus dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

CONCLUSION

For the foregoing reasons, Campbell's claims for damages against the defendants in their

official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2).  The case will proceed on all other claims set forth above.

The Court enters the following orders:

(1)     **The Clerk shall** verify the current work addresses for defendants Rollin Cook, Dave Maiga, Christine Whidden, William Mulligan, Gregorio Robles, Karl Lewis, Angel Quiros, William Faneuff, Ann Cournoyer, Warden Rodriguez, APRN Andrea C. Reischerl, Counselor Supervisor Davis, and Reverend Charles F. Williams with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Amended Complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     T**he Clerk shall** send Campbell a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

13

(5)     The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Campbell changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Campbell must give notice of a new address even if he is incarcerated.  Campbell should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Campbell has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Campbell should also notify the defendants or the attorney for the defendants of his new address.

(10)     Campbell shall utilize the Prisoner Efiling Program when filing documents with

14

the court.  Campbell is advised that the Program may be used only to file documents with the

court.  As local court rules provide that discovery requests are not filed with the court, discovery

requests must be served on defendants' counsel by regular mail.

      (11)    The Clerk shall immediately enter the District of Connecticut Standing Order Re:

Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall

send a copy to Campbell.

      So ordered.

Dated at Bridgeport, Connecticut, this 19th day of May 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
